[No. S166600. Jan. 3, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY DIAZ, Defendant and Appellant.

86

## COUNSEL

Lyn A. Woodward, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Donald E. DeNicola, Deputy State Solicitor General, Lawrence M. Daniels, Paul M. Roadarmel, Jr., and Victoria B. Wilson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

CHIN, J.—We granted review in this case to decide whether the Fourth Amendment to the United States Constitution permits law enforcement officers, approximately 90 minutes after lawfully arresting a suspect and transporting him to a detention facility, to conduct a warrantless search of the text message folder of a cell phone they take from his person after the arrest. We hold that, under the United States Supreme Court's binding precedent, such a search is valid as being incident to a lawful custodial arrest. We affirm the Court of Appeal's judgment.

### FACTUAL BACKGROUND

About 2:50 p.m. on April 25, 2007, Senior Deputy Sheriff Victor Fazio of the Ventura County Sheriff's Department witnessed defendant Gregory Diaz

participating in a police informant's controlled purchase of Ecstasy. Defendant drove the Ecstasy's seller to the location of the sale, which then took place in the backseat of the car defendant was driving. Immediately after the sale, Fazio, who had listened in on the transaction through a wireless transmitter the informant was wearing, stopped the car defendant was driving and arrested defendant for being a coconspirator in the sale of drugs. Six tabs of Ecstasy were seized in connection with the arrest, and a small amount of marijuana was found in defendant's pocket. Defendant had a cell phone on his person.

Fazio transported defendant to a sheriff's station, where a detective seized the cell phone from defendant's person and gave it to Fazio. Fazio put it with the other evidence and, at 4:18 p.m., interviewed defendant. Defendant denied having knowledge of the drug transaction. After the interview, about 4:23 p.m., Fazio looked at the cell phone's text message folder and discovered a message that said "6 4 80."[1] Based on his training and experience, Fazio interpreted the message to mean "[s]ix pills of Ecstasy for $80." Within minutes of discovering the message (and less than 30 minutes after the cell phone's discovery), Fazio showed the message to defendant. Defendant then admitted participating in the sale of Ecstasy.

Defendant was charged with selling a controlled substance (Health & Saf. Code, § 11379, subd. (a)). He pleaded not guilty and moved to suppress the fruits of the cell phone search—the text message and the statements he made when confronted with it—arguing that the warrantless search of the cell phone violated the Fourth Amendment. The trial court denied the motion, explaining: "The defendant was under arrest for a felony charge involving the sale of drugs. His property was seized from him. Evidence was seized from him. [¶] . . . [I]ncident to the arrest[,] search of his person and everything that that turned up is really fair game in terms of being evidence of a crime or instrumentality of a crime or whatever the theory might be. And under these circumstances I don't believe there's authority that a warrant was required." Defendant then withdrew his not guilty plea and pleaded guilty to transportation of a controlled substance. The trial court accepted the plea, suspended imposition of sentence, and placed defendant on probation for three years.

The Court of Appeal affirmed, finding that under governing high court precedent, because the cell phone "was immediately associated with [defendant's] person at the time of his arrest," it was "properly subjected to a delayed warrantless search." We granted defendant's petition for review.

---

[1] Fazio had to manipulate the phone and go to several different screens to access the text message folder. He did not recall whether the cell phone was on when he picked it up to look through it.

## DISCUSSION

■ The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Under this provision, as the United States Supreme Court has construed it, warrantless searches—i.e., "searches conducted outside the judicial process, without prior approval by judge or magistrate"—"are *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." (*Katz v. United States* (1967) 389 U.S. 347, 357 [19 L.Ed.2d 576, 88 S.Ct. 507], fns. omitted.)

■ One of the specifically established exceptions to the Fourth Amendment's warrant requirement is "a search incident to a lawful arrest." (*United States v. Robinson* (1973) 414 U.S. 218, 224 [38 L.Ed.2d 427, 94 S.Ct. 467] (*Robinson*).) This exception "has traditionally been justified by the reasonableness of searching for weapons, instruments of escape, and evidence of crime when a person is taken into official custody and lawfully detained. [Citation.]" (*United States v. Edwards* (1974) 415 U.S. 800, 802–803 [39 L.Ed.2d 771, 94 S.Ct. 1234] (*Edwards*).) As the high court has explained: "When a custodial arrest is made, there is always some danger that the person arrested may seek to use a weapon, or that evidence may be concealed or destroyed. To safeguard himself and others, and to prevent the loss of evidence, it has been held reasonable for the arresting officer to conduct a prompt, warrantless 'search of the arrestee's person and the area "within his immediate control" . . . .' [Citations.] [¶] Such searches may be conducted without a warrant, and they may also be made whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence. The potential dangers lurking in all custodial arrests make warrantless searches of items within the 'immediate control' area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved. [Citations.]" (*United States v. Chadwick* (1977) 433 U.S. 1, 14–15 [53 L.Ed.2d 538, 97 S.Ct. 2476] (*Chadwick*).)[2]

The People argue that the warrantless search in this case of the cell phone's text message folder was valid as a search incident to defendant's lawful

---

[2] The area within an arrestee's immediate control is " 'the area from within which [the arrestee] might gain possession of a weapon or destructible evidence.' [Citations.]" (*Chadwick, supra*, 433 U.S. at p. 14.)

arrest.[3] Defendant disagrees, arguing that the search "was too remote in time" to qualify as a valid search incident to his arrest.[4] In making this argument, he emphasizes that the phone "was exclusively held in police custody well before the search of its text message folder."

■ Resolution of this issue depends principally on the high court's decisions in *Robinson*, *Edwards*, and *Chadwick*. In *Robinson*, a police officer arrested the defendant for driving with a revoked operator's permit. (*Robinson, supra*, 414 U.S. at p. 220.) The officer conducted a patdown search and felt an object he could not identify in the breast pocket of the defendant's coat. He removed the object, which turned out to be a crumpled up cigarette package. He felt the package and determined it contained objects that were not cigarettes. He then opened the package and found 14 heroin capsules. (*Id.* at pp. 222–223.) The high court held that the warrantless search of the package was valid under the Fourth Amendment. (*Robinson, supra*, at p. 224.) It explained that, incident to a lawful custodial arrest, police have authority to conduct "a full search of the [arrestee's] person." (*Id.* at p. 235.) This authority, the court continued, exists whether or not the police have reason to believe the arrestee has on his or her person either evidence or weapons. "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search [of the person] incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and . . . in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." (*Ibid.*) Applying these principles, the court held: "The search of [the defendant's] person . . . and the seizure from him of the heroin, were permissible under established Fourth Amendment law . . . . Having in the course of a lawful search come upon the crumpled package of cigarettes, [the officer] was entitled to inspect it; and when his inspection revealed the heroin capsules, he was entitled to seize them as 'fruits, instrumentalities, or contraband' probative of criminal conduct. [Citations.]" (*Id.* at p. 236, fns. omitted.)

■ In *Edwards*, after lawfully arresting the defendant late one night for attempting to break into a post office, police took him to jail and placed him in a cell. (*Edwards, supra*, 415 U.S. at p. 801.) Ten hours later, suspecting that his clothes might contain paint chips from the window through which he had tried to enter, police made the defendant change into new clothes and

---

[3] The People do not contest that defendant had a protected expectation of privacy in the contents of his text message folder. For purposes of this opinion, we therefore assume defendant had such an expectation, and do not consider the issue.

[4] Defendant does not question the legality of either his arrest or his phone's warrantless seizure. He challenges only the validity of the warrantless search of the phone's text message folder.

held his old ones as evidence. (*Id.* at p. 802; see also *id.* at p. 810 (dis. opn. of Stewart, J.).) Subsequent examination of the old clothes revealed paint chips matching samples taken from the window. (*Id.* at p. 802.) The high court held that both the warrantless seizure of the clothes and the warrantless search of them for paint chips were valid as a search incident to lawful arrest. (*Id.* at pp. 802–809.) It expressly rejected the argument that, because the search occurred "after the administrative mechanics of arrest ha[d] been completed and the prisoner [was] incarcerated," the search of the clothes was too remote in time to qualify as a search incident to arrest. (*Id.* at p. 804.) The court explained: "[O]nce the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant *even though a substantial period of time has elapsed* between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other. This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the 'property room' of the jail, and at a later time searched and taken for use at the subsequent criminal trial. The result is the same where the property is not physically taken from the defendant until sometime after his incarceration." (*Id.* at pp. 807–808, fns. omitted, italics added.)

In *Chadwick, supra,* 433 U.S. 1, the high court cut back on the seemingly broad rule *Edwards* had announced. In *Chadwick,* federal narcotics agents observed the defendants load a 200-pound, double-locked footlocker into the trunk of a car. Having probable cause to believe the footlocker contained illegal contraband, the agents arrested the defendants and transported them to a federal building, along with the car and the footlocker. There, 90 minutes after the arrest and without obtaining a warrant or consent, the agents opened the footlocker and found marijuana inside. (*Chadwick, supra,* at pp. 4–5.) The high court rejected the argument that the warrantless search was valid as a search incident to arrest. It first reaffirmed the principle that, because of "[t]he potential dangers lurking in all custodial arrests," police may conduct a warrantless search incident to arrest "whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence." (*Id.* at pp. 15, 14.) "However," the court explained, "warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the 'search is remote in time or place from the arrest,' [citation], or no exigency exists. Once law enforcement officers have reduced luggage or other personal property *not immediately associated with the person of the arrestee* to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." (*Id.* at p. 15, italics

added.) Under this principle, the court held, because "the search was conducted more than an hour after federal agents had gained exclusive control of the footlocker and long after [the defendants] were securely in custody," it could not "be viewed as incidental to the arrest or as justified by any other exigency." (*Ibid.*) In reaching this conclusion, the court did not overrule *Robinson* or *Edwards*, but distinguished them as involving warrantless searches "of the person" rather than searches "of possessions within an arrestee's immediate control." (*Chadwick*, at p. 16, fn. 10.) The former searches, the court explained, are "justified by" the "reduced expectations of privacy caused by the arrest"; the latter are not. (*Ibid.*) Thus, the defendants' "privacy interest in the contents of the footlocker was not eliminated simply because they were under arrest." (*Ibid.*)

Under these decisions, the key question in this case is whether defendant's cell phone was "personal property . . . immediately associated with [his] person" (*Chadwick, supra*, 433 U.S. at p. 15) like the cigarette package in *Robinson* and the clothes in *Edwards*. If it was, then the delayed warrantless search was a valid search incident to defendant's lawful custodial arrest. If it was not, then the search, because it was " 'remote in time [and] place from the arrest,' " "cannot be justified as incident to that arrest" unless an "exigency exist[ed]."[5] (*Chadwick, supra*, at p. 15.)

■ We hold that the cell phone was "immediately associated with [defendant's] person" (*Chadwick, supra*, 433 U.S. at p. 15), and that the warrantless search of the cell phone therefore was valid. As the People explain, the cell phone "was an item [of personal property] on [defendant's] person at the time of his arrest and during the administrative processing at the police station." In this regard, it was like the clothing taken from the defendant in *Edwards* and the cigarette package taken from the defendant's coat pocket in *Robinson*, and it was unlike the footlocker in *Chadwick*, which was separate from the defendants' persons and was merely within the "area" of their " 'immediate control.' " (*Chadwick, supra*, 433 U.S. at p. 15.) Because the cell phone was immediately associated with defendant's person, Fazio was "entitled to inspect" its contents without a warrant (*Robinson, supra*, 414 U.S. at p. 236) at the sheriff's station 90 minutes after defendant's arrest, whether or not an exigency existed.[6]

---

[5] The approximately 90-minute delay between defendant's arrest and the search of his cell phone was substantially similar to the 90-minute delay the high court held to be too remote in *Chadwick*.

[6] Given our conclusion, we need not address the People's argument that an exigency existed because a cell phone's contents "are dynamic, in nature and subject to change without warning—by the replacement of old data with new incoming calls or messages; by a mistaken push of a button; by the loss of power; by a person contacting the cellular phone provider; or by a person pre-selecting the 'cleanup' function on the cellular phone, which limits the length

In arguing otherwise, defendant first asserts that, in deciding whether his cell phone is "the equivalent of" the cigarette package in *Robinson* or the footlocker in *Chadwick*, we should focus on its "character," not on the mere fact he was carrying it on his person. As defendant interprets the high court cases, a warrant is necessary for a delayed search unless the seized item is "clothing, or an article or container typically kept on or inside of clothing, or otherwise by its very nature carried on the arrestee's person." For two reasons, defendant argues, cell phones do not meet these criteria. First, they "are not necessarily or routinely[] worn, carried in a pocket, or attached to a person or his clothes," but are "more often kept *near* [their] owner[s], within [their] reach . . . inside a briefcase, backpack, or purse, or on a car seat or table, or plugged into a power source, or stashed inside any manner of separate bags or carrying containers." Second, cell phones "contain[] quantities of personal data unrivaled by any conventional item of evidence traditionally considered to be 'immediately associated with the person of the arrestee,' such as an article of clothing, a wallet, or a crumpled cigarette box found in an arrestee's pocket," and therefore implicate heightened "privacy concerns" that warrant treating them "like . . . the footlocker in *Chadwick*."[7] The dissent endorses defendant's latter point, asserting that *all* cell phones should be exempt from the rule of *Robinson*, *Edwards*, and *Chadwick*, because the amount of personal information cell phones can store "dwarfs that which can be carried on the person in a spatial container." (Dis. opn. of Werdegar, J., *post*, at p. 109.)

The relevant high court decisions do not support the view that whether police must get a warrant before searching an item they have properly seized *from an arrestee's person* incident to a lawful custodial arrest depends on the item's character, including its capacity for storing personal information. As noted above, *Chadwick* explains that a delayed warrantless search "of the person" (*Chadwick, supra*, 433 U.S. at p. 16, fn. 10)—which includes property "immediately associated with the person" at the time of arrest (*id.* at p. 15), but excludes property that is only "within an arrestee's immediate control" (*id.* at p. 16, fn. 10)—is valid because of "reduced expectations of privacy caused by the arrest" (*ibid.*). *Robinson* states that if a custodial arrest is lawful, then a "full" search of the arrestee's person "requires no additional justification." (*Robinson, supra*, 414 U.S. at p. 235.)

---

of time messages are stored before they are automatically deleted." We note, however, that the People have offered no evidence to support this claim. Nor have they offered evidence as to whether text messages deleted from a cell phone may be obtained from the cell phone's provider. (See Orso, *Cellular Phones, Warrantless Searches, and the New Frontier of Fourth Amendment Jurisprudence* (2010) 50 Santa Clara L.Rev. 183, 199 ["text messages are feasibly accessible for about two weeks from the cellular provider"].)

[7] Defendant's argument implicitly recognizes that courts commonly hold that delayed warrantless searches of wallets found on arrestees' persons are valid searches incident to arrest. (See, e.g., *U.S. v. Passaro* (9th Cir. 1980) 624 F.2d 938, 943–944.)

*Edwards* states that "once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other." (*Edwards, supra*, 415 U.S. at p. 807.) Nothing in these decisions even hints that whether a warrant is necessary for a search of an item properly seized from an arrestee's person incident to a lawful custodial arrest depends in any way on the character of the seized item.

 Moreover, in analogous contexts, the high court has expressly rejected the view that the validity of a warrantless search depends on the character of the searched item. In *United States v. Ross* (1982) 456 U.S. 798, 825 [72 L.Ed.2d 572, 102 S.Ct. 2157] (*Ross*), the court held that police who have probable cause to believe a lawfully stopped car contains contraband may conduct a warrantless search of any compartment or container in the car that may conceal the object of the search. As relevant here, the court stated that whether a particular container may be searched without a warrant does *not* depend on the character of the container, explaining: "[A] constitutional distinction between 'worthy' and 'unworthy' containers would be improper. Even though such a distinction perhaps could evolve in a series of cases in which paper bags, locked trunks, lunch buckets, and orange crates were placed on one side of the line or the other, the central purpose of the Fourth Amendment forecloses such a distinction." (*Id.* at p. 822, fns. omitted.) "The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted."[8] (*Ross*, at p. 824.) In *New York v. Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860] (*Belton*), the court held that police making a lawful custodial arrest of a car's occupant "may, as a contemporaneous incident of that arrest," "examine the contents of *any* containers found within the passenger compartment." (*Id.* at p. 460, italics added.) As relevant here, the court rejected the proposition that whether a particular container may be searched without a warrant depends on the extent of the arrestee's reasonable expectation of privacy in that container, explaining: "[A]ny container[] . . . [in] the passenger compartment . . . may . . . be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that *the lawful custodial arrest justifies the*

---

[8] In reaching this conclusion, the high court in *Ross* rejected the view of several lower court judges who had concluded that, based on differing expectations of privacy, the warrantless search of a brown paper bag in Ross's stopped car was valid, but the warrantless search of a zippered leather pouch was not. (*Ross, supra*, 456 U.S. at p. 802.)

*infringement of any privacy interest the arrestee may have.*"[9] (*Belton*, at pp. 460–461, italics added.) Under *Ross*, *Belton*, and the other high court decisions discussed above, there is no legal basis for holding that the scope of a permissible warrantless search of an arrestee's person, including items immediately associated with the arrestee's person, depends on the nature or character of those items.

■ Regarding the particular focus of defendant and the dissent on the alleged storage capacity of cell phones, for several reasons the argument is unpersuasive. First, the record contains no evidence regarding the storage capacity of cell phones in general or of defendant's cell phone in particular. Second, neither defendant nor the dissent persuasively explains why the sheer quantity of personal information should be determinative. Even "small spatial container[s]" (dis. opn. of Werdegar, J., *post*, at p. 105) that hold less information than cell phones may contain highly personal, intimate and *private* information, such as photographs, letters, or diaries.[10] If, as the high court held in *Ross*, "a traveler who carries a toothbrush and a few articles of clothing in a paper bag or knotted scarf [has] an equal right to conceal his possessions from official inspection as the sophisticated executive with the locked attache case" (*Ross, supra*, 456 U.S. at p. 822), then travelers who carry sophisticated cell phones have no greater right to conceal personal information from official inspection than travelers who carry such information

---

[9] In *Arizona v. Gant* (2009) 556 U.S. 332, 335 [173 L.Ed.2d 485, 129 S.Ct. 1710, 1714], the high court limited *Belton, supra*, 453 U.S. 454, by holding that police may not search containers in a vehicle's passenger compartment "incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle," unless "it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." At the same time, the court reaffirmed *Belton*'s holding that whether a particular container may be searched does not depend on its character or the extent of the arrestee's expectation of privacy in it. (*Gant*, 556 U.S. at p. 345 [129 S.Ct. at p. 1720] [in permissible warrantless search, police may search "every purse, briefcase, or other container within" the car's passenger compartment].) *Gant* is not otherwise relevant here, as it involved a search of the area within an arrestee's immediate control, not of the arrestee's person. (*Id.* at p. 335 [129 S.Ct. at p. 1714].)

[10] The dissent does not question that police may examine personal photographs found upon an arrestee's person, but objects that the high court has not held that police may read the contents of a letter or diary seized from an arrestee's person. (Dis. opn. of Werdegar, J., *post*, at p. 109, fn. 8.) However, several of the court of appeals decisions the high court in *Edwards* cited with approval on the issue of delayed searches (*Edwards, supra*, 415 U.S. at pp. 803–804, fn. 4) upheld the warrantless examination, incident to arrest, of diaries or personal papers found upon the arrestee's person. (See *U.S. v. Gonzalez-Perez* (5th Cir. 1970) 426 F.2d 1283, 1285–1287 [papers contained in pockets, wallets, and purse]; *U.S. v. Frankenberry* (2d Cir. 1967) 387 F.2d 337, 339 [diary]; *Cotton v. U.S.* (9th Cir. 1967) 371 F.2d 385, 392 [papers contained in pockets]; *Grillo v. U.S.* (1st Cir. 1964) 336 F.2d 211, 213 [paper contained in wallet].)

in "small spatial container[s]."[11] (Dis. opn. of Werdegar, J., *post*, at p. 105.) And if, as the high court held in *Belton*, differing expectations of privacy based on whether a container is open or closed are irrelevant to the validity of a warrantless search incident to arrest (*Belton, supra*, 453 U.S. at p. 461), then differing expectations of privacy based on the amount of information a particular item contains should also be irrelevant. Regarding the quantitative analysis of defendant and the dissent, the salient point of the high court's decisions is that a "lawful custodial arrest justifies the infringement of *any* privacy interest the arrestee may have" in property immediately associated with his or her person at the time of arrest (*ibid.*, italics added), even if there is no reason to believe the property contains weapons or evidence (*Robinson, supra*, 414 U.S. at p. 235). Third, even were it true that the amount of personal information *some* cell phones can store "dwarfs that which can be carried on the person in a spatial container" (dis. opn. of Werdegar, J., *post*, at p. 109)—and, again, the record contains no evidence on this question— defendant and the dissent fail to explain why this circumstance would justify exempting *all* cell phones, including those with limited storage capacity, from the rule of *Robinson*, *Edwards*, and *Chadwick*.[12] **(10)** A warrantless search incident to a lawful arrest of a cell phone with limited storage capacity does not become constitutionally unreasonable simply because other cell phones may have a significantly greater storage capacity.

Finally, adopting the quantitative approach of defendant and the dissent would create difficult line-drawing problems for both courts and police officers in the field. How would a court faced with a similar argument as to another type of item determine whether the item's storage capacity is constitutionally significant? And how would an officer in the field determine this question upon arresting a suspect? Defendant and the dissent offer no guidance on these questions. Their approach would be "inherently subjective and highly fact specific, and would require precisely the sort of ad hoc determinations on the part of officers in the field and reviewing courts" that the high court has condemned. (*Thornton v. United States* (2004) 541 U.S.

---

[11] Were the rule otherwise, those carrying small spatial containers, which are legally subject to seizure *and search* if found upon the person at the time of arrest, would find little solace in discovering that their intimate secrets would have been protected if only they had used a device that could hold more personal information.

[12] According to the United States Department of Justice, drug traffickers commonly use disposable cell phones, because they are relatively inexpensive and difficult to trace. (National Drug Intelligence Center, United States Department of Justice, Midwest High Intensity Drug Trafficking Area Drug Market Analysis 2009 (Mar. 2009) <http://www.justice.gov/ndic/pubs32/32775/distro.htm> [as of Jan. 3, 2011].) Such phones have limited storage capacity. (Ferro, *Cell phones: disposable mobile phone finally hits the US* (May 31, 2008) TECH.BLORGE Technology News <http://tech.blorge.com/Structure:%20/2008/05/31/cell-phones-disposable-mobile-phones-finally-hits-the-us/> [as of Jan. 3, 2011].)

615, 623 [158 L.Ed.2d 905, 124 S.Ct. 2127]; see also *Belton, supra,* 453 U.S. at pp. 458–459.) Similar concerns led the high court in *Robinson* to adopt the "straightforward," "easily applied, and predictably enforced" rule that " 'a full [warrantless] search of the person' " is constitutionally permissible, and to "reject[] the suggestion that 'there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest.' [Citation.]" (*Belton, supra,* 453 U.S. at p. 459, quoting *Robinson, supra,* 414 U.S. at p. 235.) Adopting the quantitative approach of defendant and the dissent, under which the validity of a warrantless search would turn on the amount of personal information a particular item might contain, would be contrary to these high court precedents. (See *U.S. v. Murphy* (4th Cir. 2009) 552 F.3d 405, 411 [in upholding warrantless search incident to arrest, refusing to distinguish cell phones based on their "large" storage capacity because of difficulty quantifying that term "in any meaningful way"].)

Defendant next argues that, in determining whether a warrant was necessary, we should distinguish between *the cell phone itself* and its *contents.* According to defendant, "[t]here is little about a cell phone's *content* that is conceptually linked to or inextricably associated with the physical body or the inherent attributes of the arrestee's person. A cell phone's data content is not at all like a pair of pants or even a piece of paper folded up inside a wallet that has been tucked inside the pocket of a pair of pants." It "cannot be worn or 'carried' on one's person." "[T]he nature of the evidence that a cell phone may contain, and the fact that the cell phone 'container' is readily differentiated from the cell phone 'content,' warrants treating the cell phone content differently from the seized cell phone itself." The dissent makes a similar argument, distinguishing between "the arrestee's actual person" and the cell phone's content—i.e., the stored data—and arguing that the loss of "*bodily* privacy" that justifies a warrantless "search of an arrestee's person" upon arrest does not also justify the search of a cell phone found upon the arrestee's person. (Dis. opn. of Werdegar, J., *post,* at p. 110.)

■ These arguments are inconsistent with the high court's decisions. Those decisions hold that the loss of privacy upon arrest extends beyond the arrestee's body to include "personal property . . . immediately associated with the person of the arrestee" at the time of arrest. (*Chadwick, supra,* 433 U.S. at p. 15.) They also hold, contrary to the dissent's suggestion, that this loss of privacy entitles police not only to "seize" anything of importance they find on the arrestee's body (dis. opn. of Werdegar, J., *post,* at p. 110), but also *to open and examine* what they find. Thus, the court in *Robinson* held that a police officer, despite seizing a cigarette package from the defendant's shirt

pocket and reducing it to police control, did not need to obtain a warrant before opening the package and examining its contents. (*Robinson, supra,* 414 U.S. at p. 236.) Similarly, the court in *Edwards* held that the police, despite seizing the defendant's clothes and reducing them to police control, did not need to obtain a warrant before subjecting those clothes to laboratory testing. (*Edwards, supra,* 415 U.S. at pp. 802–809.) In both cases, the high court expressly refused to distinguish the contents of the seized item from either the seized item itself or "the arrestee's actual person." (Dis. opn. of Werdegar, *post,* at p. 110.) As the court later explained in *Belton* in refusing to draw a constitutional distinction between the seizure of an item and a search of that item: "[U]nder this fallacious theory no search or seizure incident to a lawful custodial arrest would ever be valid; by seizing an article even on the arrestee's person, an officer may be said to have reduced that article to his [or her] 'exclusive control.' " (*Belton, supra,* 453 U.S. at pp. 461–462, fn. 5.) ▮ Under these high court decisions, in determining the validity of a search incident to arrest, there is no legal basis for distinguishing the contents of an item found upon an arrestee's person from either the seized item itself or "the arrestee's actual person."[13] (Dis. opn. of Werdegar, J., *post,* at p. 110.)

▮ The dissent makes several arguments in addition to defendant's, but they are also unpersuasive. Although conceding that *Robinson, Edwards,* and *Chadwick,* "reasonably read," authorize delayed warrantless searches "of containers" immediately associated with an arrestee's person, the dissent asserts that cell phones are exempt from this rule because they are not " 'containers' within the meaning of the high court's search decisions." (Dis. opn. of Werdegar, J., *post,* at p. 109.) However, application of the rule of *Robinson, Edwards,* and *Chadwick* turns not on whether the item in question constitutes a "container," but on whether it is "property," i.e., a "belonging[]"

---

[13] Defendant insists that *Edwards* is "limited by its facts to the delayed search of an article of clothing." However, the court's discussion more broadly addressed "other belongings" (*Edwards, supra,* 415 U.S. at p. 804) and "effects in [the arrestee's] possession" (*id.* at p. 807). We do not consider ourselves free to disregard this discussion, especially in light of *Robinson,* which did not involve clothing, and *Chadwick,* which reaffirmed the validity of delayed warrantless searches of·"personal property . . . immediately associated with the person of the arrestee." (*Chadwick, supra,* 433 U.S. at p. 15.) Defendant alternatively suggests that *Edwards* validates delayed warrantless searches only of " 'effects still in the defendant's possession at the place of detention, such as the defendant's clothing.' " Again, the high court's opinion is not so limited; the court stated that a delayed warrantless search is valid "where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the 'property room' of the jail, and at a later time searched and taken for use at the subsequent criminal trial." (*Edwards, supra,* at p. 807.)

or an "effect[]."[14] (*Edwards, supra*, 415 U.S. at pp. 803–804, 807–808; see also *Chadwick, supra*, 433 U.S. at p. 15; *Robinson, supra*, 414 U.S. at pp. 229, 232.) The dissent's attempt to limit the reach of that rule to "clothing and small spatial containers" (dis. opn. of Werdegar, J., *post*, at p. 109) finds no support in the language of the high court's governing decisions. In this respect, the language of those decisions is entirely consistent with the Fourth Amendment itself, which protects "[t]he right of the people to be secure in their persons, houses, papers, *and effects*." (Italics added.) It is also consistent with one of the justifications for the search incident to arrest exception: "the reasonableness of searching for . . . *evidence* of crime when a person is taken into official custody and lawfully detained. [Citation.]" (*Edwards, supra*, 415 U.S. at pp. 802–803, italics added.) Contrary to the dissent's analysis, whether an item of personal property constitutes a "container" bears no relation to this justification.[15]

■■■ The dissent also errs in asserting that the high court's "rationale" for allowing delayed warrantless searches incident to arrest is of "doubtful" applicability to "items that are easily removed from the arrestee's possession and secured by the police." (Dis. opn. of Werdegar, J., *post*, at p. 107.) In *Edwards*, the high court declared it "plain that searches and seizures that [may] be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention." (*Edwards, supra*, 415 U.S. at p. 803.) The rationale for this rule, the court explained, is that the arrestee is "no more imposed upon" by a delayed search "than he [or she] could have been" by a warrantless search "at the time and place of the arrest . . . ." (*Id.* at p. 805.) There is "little difference," the court reasoned, between conducting the search at the place of arrest and conducting it later at the place of detention. (*Id.* at p. 803.) This analysis is consistent with the high court's earlier statement in *Robinson* that "[a] police officer's determination as to how *and where* to search the person of a suspect whom he has arrested is necessarily a quick *ad hoc* judgment which the Fourth Amendment does

---

[14] The word "container" does not appear in *Robinson* and *Edwards*. It appears once in *Chadwick*, in a footnote where the high court explained that the defendant's principal privacy interest in the footlocker was "not in the container itself . . . but in its contents." (*Chadwick, supra*, 433 U.S. at pp. 13–14, fn. 8.)

[15] The high court did discuss containers in the decisions we have cited as involving "analogous contexts." (*Ante*, at p. 95.) In this respect, our analysis is consistent with the weight of authority. (*State v. Boyd* (2010) 295 Conn. 707 [992 A.2d 1071, 1089, fn. 17] ["A number of courts have analogized cell phones to closed containers and concluded that a search of their contents is, therefore, valid under the automobile exception or the exception for a search incident to arrest."].) Moreover, contrary to the dissent's analysis, nothing in these analogous decisions purports to limit the rule of *Robinson*, *Edwards*, and *Chadwick* to property that classifies as a container.

not require to be broken down in each instance into an analysis of each step in the search." (*Robinson, supra,* 414 U.S. at p. 235, first italics added.) It is also consistent with the high court's subsequent statement in *Chadwick* that a delayed warrantless search of personal property immediately associated with the person of an arrestee at the time of arrest is justified by the "reduced expectations of privacy caused by the arrest." (*Chadwick, supra,* 433 U.S. at p. 16, fn. 10.) Contrary to the dissent's assertion, the rationale of these decisions—that a delayed search of an item of personal property found upon an arrestee's person no more imposes upon the arrestee's constitutionally protected privacy interest than does a search at the time and place of arrest—fully applies to the delayed search of defendant's cell phone.[16]

For the reasons discussed above, we hold that, under the United States Supreme Court's binding precedent, the warrantless search of defendant's cell phone was valid. If, as the dissent asserts, the wisdom of the high court's decisions "must be newly evaluated" in light of modern technology (dis. opn. of Werdegar, J., *post,* at p. 104), then that reevaluation must be undertaken by the high court itself.[17]

---

[16] Not satisfied with the high court's explicit explanations, the dissent, citing just two of the 20 court of appeals decisions *Edwards* string-cited on the point (see *Edwards, supra,* 415 U.S. at pp. 803–804, fn. 4), asserts that the high court's "rationale is to avoid logistically awkward or embarrassing public searches." (Dis. opn. of Werdegar, J., *post,* at p. 107.) This assertion finds no support in the language of the high court's decisions, no doubt because making the validity of a delayed search turn on the logistics or potential embarrassment of a public search would, like the dissent's quantitative approach, require "the sort of ad hoc determinations on the part of officers in the field and reviewing courts" that the high court has condemned. (*Thornton v. United States, supra,* 541 U.S. at p. 623.)

[17] Only a few published decisions exist regarding the validity of a warrantless search of a cell phone incident to a lawful custodial arrest. Most are in accord with our conclusion. (See, e.g., *U.S. v. Murphy, supra,* 552 F.3d at p. 412 [citing *Edwards* in holding that "once [the defendant's] cell phone was held for evidence, other officers and investigators were entitled to conduct a further review of its contents . . . without seeking a warrant"]; *U.S. v. Finley* (5th Cir. 2007) 477 F.3d 250, 260, fn. 7 [arrestee's cell phone "does not fit into [*Chadwick*'s] category of 'property not immediately associated with [his] person' because it was on his person at the time of his arrest"]; *U.S. v. Wurie* (D.Mass. 2009) 612 F.Supp.2d 104, 110 [upholding delayed search of cell phone, finding "no principled basis for distinguishing a warrantless search of a cell phone from the search of other types of personal containers found on a defendant's person that" have been upheld under *Edwards*].)

In a closely divided (four to three) opinion, the Supreme Court of Ohio held otherwise, reasoning that "because a person has a high expectation of privacy in a cell phone's contents," police, after seizing a cell phone from an arrestee's person, "must . . . obtain a warrant before intruding into the phone's contents." (*State v. Smith* (2009) 124 Ohio St.3d 163 [920 N.E.2d 949, 955].) The Ohio court's focus on the extent of the arrestee's expectation of privacy is, as previously explained, inconsistent with the high court's decisions.

DISPOSITION

The judgment of the Court of Appeal is affirmed.

Kennard, Acting C. J., Baxter, J., Corrigan, J., and George, J.,* concurred.

**KENNARD, Acting C. J.,** Concurring.—The majority holds that the police may, without obtaining a warrant, view or listen to information electronically stored on a mobile phone that a suspect was carrying when lawfully arrested. The dissent disagrees. I explain why I join the majority rather than the dissent.

On June 8, 1982, California voters enacted an initiative measure known as Proposition 8. Among other things, Proposition 8 added to the California Constitution a "Right to Truth-in-Evidence" provision (Cal. Const., art. I, § 28, former subd. (d) [now subd. (f)(2)]). That provision generally prohibits exclusion of relevant evidence in a criminal proceeding on the ground that the evidence was obtained unlawfully. Because the federal Constitution is "the supreme law of the land" (U.S. Const., art. VI, § 2), and thus prevails over conflicting state constitutional provisions, the state Constitution's "Right to Truth-in-Evidence" provision does not apply when relevant evidence must be excluded because it was obtained in violation of the federal Constitution's Fourth Amendment, which prohibits "unreasonable searches and seizures." As a result, in California criminal proceedings all issues related to the suppression of evidence derived from police searches and seizures are now determined by application of federal constitutional law. (*People v. Lenart* (2004) 32 Cal.4th 1107, 1118 [12 Cal.Rptr.3d 592, 88 P.3d 498]; *People v. Sapp* (2003) 31 Cal.4th 240, 267 [2 Cal.Rptr.3d 554, 73 P.3d 433]; *People v. Bradford* (1997) 15 Cal.4th 1229, 1291 [65 Cal.Rptr.2d 145, 939 P.2d 259].) On issues of federal constitutional law, the decisions of the United States Supreme Court are controlling. (*Gates v. Discovery Communications, Inc.* (2004) 34 Cal.4th 679, 692 [21 Cal.Rptr.3d 663, 101 P.3d 552].)

As the majority explains, three decisions of the United States Supreme Court compel the result in this case. Those decisions are *United States v. Robinson* (1973) 414 U.S. 218 [38 L.Ed.2d 427, 94 S.Ct. 467] (*Robinson*), *United States v. Edwards* (1974) 415 U.S. 800 [39 L.Ed.2d 771, 94 S.Ct. 1234] (*Edwards*), and *United States v. Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476] (*Chadwick*). Under *Robinson* and *Chadwick*, a warrant is not required for police to conduct a "full search of the person" incident to a lawful arrest (*Robinson*, at p. 235), and the police may examine an object

---

*Retired Chief Justice of California, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

found during the search to determine whether it contains evidence of crime (*id.* at p. 236), so long as the object is one that is "immediately associated with the person of the arrestee" (*Chadwick*, at p. 15). Under *Edwards*, this search and inspection need not occur at the time and place of the arrest; it may occur even after "a substantial period of time has elapsed." (*Edwards*, at p. 807.)

When carried in clothing (rather than inside luggage or a similar container), a mobile phone is personal property that is "immediately associated with the person of the arrestee" (*Chadwick, supra*, 433 U.S. 1, 15). Accordingly, under controlling high court decisions, police may, without obtaining a warrant, inspect a mobile phone carried by a suspect at the time of arrest, by viewing or listening to its electronically stored data, including text messages, even when a substantial time period has elapsed since the arrest.

The dissent asserts that in light of the vast data storage capacity of "smart phones" and similar devices, the privacy interests that the federal Constitution's Fourth Amendment was intended to protect would be better served by a rule that did not allow police "to rummage at leisure through the wealth of personal and business information that can be carried on a mobile phone or handheld computer merely because the device was taken from an arrestee's person." (Dis. opn., *post*, at p. 111.) The dissent also asserts that the three high court decisions I have mentioned are not binding here because they "were not made with mobile phones, smartphones and handheld computers— none of which existed at the time—in mind." (Dis. opn., *post*, at p. 109.) In my view, however, the recent emergence of this new technology does not diminish or reduce in scope the binding force of high court precedents.

I join the majority rather than the dissent because the United States Supreme Court has cautioned that on issues of federal law all courts must follow its directly applicable precedents, even when there are reasons to anticipate that it might reconsider, or create an exception to, a rule of law that it has established. (*Rodriguez de Quijas v. Shearson/Am. Exp.* (1989) 490 U.S. 477, 484 [104 L.Ed.2d 526, 109 S.Ct. 1917].) The high court has reserved to itself alone "the prerogative of overruling its own decisions." (*Ibid.*; see *Scheiding v. General Motors Corp.* (2000) 22 Cal.4th 471, 478 [93 Cal.Rptr.2d 342, 993 P.2d 996].)

Under the compulsion of directly applicable United States Supreme Court precedent, I join the majority in affirming the Court of Appeal's judgment.

**WERDEGAR, J.,** Dissenting.—I respectfully dissent. The majority concludes police may search the data stored on an arrestee's mobile phone without a warrant, as they may search clothing (see *United States v. Edwards* (1974) 415 U.S. 800 [39 L.Ed.2d 771, 94 S.Ct. 1234] (*Edwards*)) or small

physical containers such as a crumpled cigarette package (see *United States v. Robinson* (1973) 414 U.S. 218 [38 L.Ed.2d 427, 94 S.Ct. 467] (*Robinson*)) taken from the person of an arrestee. In my view, electronic communication and data storage devices carried on the person—cellular phones, smartphones and handheld computers—are not sufficiently analogous to the clothing considered in *Edwards* or the crumpled cigarette package in *Robinson* to justify a blanket exception to the Fourth Amendment's warrant requirement. A particular context-dependent balancing of constitutionally protected privacy interests against the police interests in safety and preservation of evidence led the United States Supreme Court, over 30 years ago, to hold searches of the arrestee's person reasonable despite the lack of probable cause or a warrant and despite substantial delay between the arrest and the search. (See *United States v. Chadwick* (1977) 433 U.S. 1, 14–15 [53 L.Ed.2d 538, 97 S.Ct. 2476] (*Chadwick*).) Today, in the very different context of mobile phones and related devices, that balance must be newly evaluated.[1]

The potential intrusion on informational privacy involved in a police search of a person's mobile phone, smartphone or handheld computer is unique among searches of an arrestee's person and effects. A contemporary smartphone[2] can hold hundreds or thousands of messages, photographs, videos, maps, contacts, financial records, memoranda and other documents, as well as

---

[1] The separately concurring justice correctly observes that we must follow directly applicable decisions from the United States Supreme Court even if we think them due for reexamination. (*Rodriguez de Quijas v. Shearson/Am. Exp.* (1989) 490 U.S. 477, 484 [104 L.Ed.2d 526, 109 S.Ct. 1917].) But where high court precedent is not on all fours with the case at bar, we also must remember that the language of Supreme Court decisions is to "be read in the light of the facts of the case under discussion" and that "[g]eneral expressions transposed to other facts are often misleading." (*Armour & Co. v. Wantock* (1944) 323 U.S. 126, 133 [89 L.Ed. 118, 65 S.Ct. 165].) Indeed, the Supreme Court recently emphasized that stare decisis should not be used "to justify the continuance of an unconstitutional police practice. . . . in a case that is so easily distinguished from the decisions that arguably compel it." (*Arizona v. Gant* (2009) 556 U.S. 332, 348 [173 L.Ed.2d 485, 499, 129 S.Ct. 1710, 1722].)

The facts of the present case, as I will explain, differ in important respects from those that gave rise to the United States Supreme Court decisions in *Robinson*, *Edwards* and *Chadwick*. These precedents, therefore, provide no basis for evading this court's independent responsibility to determine the constitutionality of the search at issue. While we of course have no authority to overrule them, we may and should refrain from applying their language blindly to new and fundamentally different factual circumstances.

[2] PCMag.com's online encyclopedia defines a smartphone as "[a] cellular telephone with built-in applications and Internet access. Smartphones provide digital voice service as well as text messaging, e-mail, Web browsing, still and video cameras, MP3 player and video and TV viewing. In addition to their built-in functions, smartphones can run myriad applications, turning the once single-minded cellphone into a mobile computer." (<http://www.pcmag.com/encyclopedia_term/0,2542,%20t=Smartphone&i=51537,00.asp> [as of Jan. 3, 2011].)

records of the user's telephone calls and Web browsing.[3] Never before has it been possible to carry so much personal or business information in one's pocket or purse. The potential impairment to privacy if arrestees' mobile phones and handheld computers are treated like clothing or cigarette packages, fully searchable without probable cause or a warrant, is correspondingly great.

Although the record does not disclose the type of mobile phone defendant possessed, I discuss smartphones as well as other mobile phones for two reasons. First, the rule adopted by the majority—that an electronic device carried on the person is for Fourth Amendment purposes indistinguishable from an individual's clothing or a small spatial container—is broad enough to encompass all types of handheld electronic data devices, including smartphones such as iPhones and BlackBerry devices, as well as other types of handheld computers. While I disagree with the majority's holding on the validity of the search here, I agree that the permissibility of a search incident to arrest should not depend on the features or technical specifications of the mobile device, which could be difficult to determine at the time of arrest.[4] Second, smartphones make up a growing share of the United States mobile phone market and are likely to be pervasive in the near future. (See Gershowitz, *The iPhone Meets the Fourth Amendment, supra*, 56 UCLA L.Rev. at p. 29 ["It does not take a crystal ball to predict that such devices will be ubiquitous in the United States within a few years."].)[5] The question of when and how they may be searched is therefore an important one.

Warrantless searches incident to arrest are justified by the important interests in officer safety and preservation of evidence. "When a custodial arrest is made, there is always some danger that the person arrested may seek

---

[3] Apple's iPhone 4, HTC's Droid Incredible, and the BlackBerry Torch all can store up to 32 gigabytes of data, which could include thousands of images or other digital files. (See <http://www.apple.com/iphone/specs.html>; <http://www.htc.com/us/products/droid-incredible-verizon?view=1-1&sort=0#tech-specs>; and <http://us.blackberry.com/smartphones/blackberrytorch/#!phone-specifications> [all as of Jan. 3, 2011].) On the capabilities of smartphones generally, see Gershowitz, *The iPhone Meets the Fourth Amendment* (2008) 56 UCLA L.Rev. 27, 29–30.

[4] But see Orso, *Cellular Phones, Warrantless Searches, and the New Frontier of Fourth Amendment Jurisprudence* (2010) 50 Santa Clara L.Rev. 183, 222 (proposing to distinguish smartphones from "older generation cellular phones" by presence of a touch screen or full keyboard, and to impose stricter limits on searches of smartphones).

[5] In the third quarter of 2010 alone, for example, more than 20 million smartphones were reportedly sold in the United States, up from about 14.5 million in the second quarter of 2010 and 9.7 million in the same quarter of 2009. (Bilton, *The Race to Dominate the Smartphone Market*, the New York Times Bits Blog (Nov. 1, 2010) <http://bits.blogs.nytimes.com/2010/11/01/apple-and-google-excel-in-u-s-smartphone-growth/> [as of Jan. 3, 2011]; Hamblen, *OS war has Android on top in U.S. smartphone sales* (Aug. 12, 2010) Computerworld <http://www.computerworld.com/s/article/9180624/OS_war_has_Android_on_top_in_U.S._smartphone_sales> [as of Jan. 3, 2011].)

to use a weapon, or that evidence may be concealed or destroyed. To safeguard himself and others, and to prevent the loss of evidence, it has been held reasonable for the arresting officer to conduct a prompt, warrantless 'search of the arrestee's person and the area "within his immediate control"— construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.' " (*Chadwick, supra,* 433 U.S. at p. 14, quoting *Chimel v. California* (1969) 395 U.S. 752, 763 [23 L.Ed.2d 685, 89 S.Ct. 2034].)

Weapons, of course, may be hidden in an arrestee's clothing or in a physical container on the person. But there is apparently no "app" that will turn an iPhone or any other mobile phone into an effective weapon for use against an arresting officer (and if there were, officers would presumably seek to disarm the phone rather than to search its data files). Clearly, any justification for the warrantless search of a mobile phone must come from the possibility that the arrestee might, during the arrest, destroy evidence stored on the phone.

Once a mobile phone has been seized from an arrestee and is under the exclusive control of the police, the arrestee, who is also in police custody, cannot destroy any evidence stored on it.[6] At that point a search of its stored data would seem to require a warrant, for "when no exigency is shown to support the need for an immediate search, the Warrant Clause places the line at the point where the property to be searched comes under the exclusive dominion of police authority." (*Chadwick, supra,* 433 U.S. at p. 15.) As the majority notes (maj. opn., *ante,* at pp. 93–94, fn. 6), no evidence of exigency was presented in this case—no evidence that the text messages on defendant's phone were subject to imminent loss and could not, in any event, be obtained from defendant's cellular provider.[7]

---

[6] Defendant did not challenge the seizure of his phone, only the search of the data stored on it. Nor do I contend the police needed a warrant or probable cause to take defendant's phone from him and secure it. Once secured, the phone could have been searched later if a warrant, founded on probable cause, issued for the search.

[7] At oral argument, the Attorney General noted that data on some smartphones can be remotely wiped, which might allow an accomplice to destroy evidence on the phone even while the arrestee remains in custody and the phone in police control. As an argument for warrantless searching, this proves too much. A suspect arrested in his or her home or office might also leave behind a computer with evidence that could be destroyed by an accomplice while the arrestee is in custody, but this possibility does not entitle police to search the contents of such computers without probable cause or a search warrant. In either circumstance (home computer or handheld computer) an immediate search without waiting for a warrant might be desirable from the perspective of efficient policing, but "the mere fact that law enforcement may be made more efficient can never by itself justify disregard of the Fourth Amendment." (*Mincey v. Arizona* (1978) 437 U.S. 385, 393 [57 L.Ed.2d 290, 98 S.Ct. 2408].) In any event, it appears that remote wiping can be avoided by removing the smartphone's battery and/or storing the phone in a shielded container, as law enforcement officers are being

We are left, then, with the claim, accepted by the majority, that a mobile phone, like clothing and other items carried on the arrestee's person, may, under *Edwards*, be searched without a warrant even after the item has been secured and the suspect taken into custody, if it could have been searched at the time and place of arrest. (See *Edwards, supra*, 415 U.S. at pp. 803–804, 807–808.) As to clothing and small physical containers, the law, in effect, indulges a fiction that an item that was on the arrestee's person when he was detained is *still* on his person—and thus vulnerable to destruction of evidence—notwithstanding that the arrestee is safely in custody and the item securely in police control. (See *New York v. Belton* (1981) 453 U.S. 454, 466 [69 L.Ed.2d 768, 101 S.Ct. 2860] (dis. opn. of Brennan, J.) [characterizing holding in *Belton*, which allowed a vehicle interior to be searched incident to arrest, as resting on "a fiction—that the interior of a car is *always* within the immediate control of an arrestee who has recently been in the car"]; Butterfoss, *As Time Goes By: The Elimination of Contemporaneity and Brevity as Factors in Search and Seizure Cases* (1986) 21 Harv.C.R.-C.L. L.Rev. 603, 625 [broadly read, *Edwards* represented a "radical shift" in approach to the delayed-search problem, by which an exigency exception to the traditional contemporaneity rule displaced the rule itself].)

Beyond observing that the defendant in *Edwards* "was no more imposed upon" than if his clothes had been taken from him earlier (*Edwards, supra*, 415 U.S. at p. 805), the *Edwards* court did not explain its reasons for allowing delayed warrantless searches incident to arrest. In particular, the high court did not explain what police interest *justified* a delayed warrantless search once the arrestee and his or her effects are safely in police control. But court of appeals decisions cited by the high court (*id.* at pp. 803–804, fn. 4) suggest the rationale is to avoid logistically awkward or embarrassing public searches. (See *U.S. v. Gonzalez-Perez* (5th Cir. 1970) 426 F.2d 1283, 1287 ["The arresting officers are not required to stand in a public place examining papers or other evidence on the person of the defendant in order for such evidence to be admissible."]; *U.S. v. DeLeo* (1st Cir. 1970) 422 F.2d 487, 493 ["Were this not to be so, every person arrested for a serious crime would be subjected to thorough and possibly humiliating search where and when apprehended."].) This rationale makes sense as to an arrestee's actual person or clothing—the issue in *Edwards*—but its applicability to items that are easily removed from the arrestee's possession and secured by the police, such as mobile phones, is doubtful. With such items the police choices are not limited to an awkward or cursory on-the-spot search or a thorough warrantless search at the station house. Rather, the item can be taken from the

---

trained to do. (See Grubb, *Remote wiping thwarts secret service*, ZDNet (Australian ed., May 18, 2010) <http://www.zdnet.com.au/remote-wiping-thwarts-secret-service-339303239.htm> [as of Jan. 3, 2011].)

arrestee and securely held until (assuming probable cause for a search exists) a warrant has issued. (See *U.S. v. Monclavo-Cruz* (9th Cir. 1981) 662 F.2d 1285, 1288 [delayed warrantless search of purse held unreasonable: "The fact that an officer is prevented from conducting a *Chimel/Belton* search, however, is not a sufficient reason to justify a search an hour later at the station. The protective rationale for the search no longer applies." (italics added)].)

Recently, addressing the search of an arrestee's vehicle, the high court rejected the fictional approach to justification of a search incident to arrest, holding instead "that the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." (*Arizona v. Gant, supra,* 556 U.S. at p. 343 [173 L.Ed.2d at p. 496, 129 S.Ct. at p. 1719].) Just as the court in *Gant* adopted a narrow reading of *New York v. Belton, supra,* 453 U.S. 454, so, too, some courts and commentators have suggested a narrow reading of *Edwards,* in which delayed searches incident to arrest would be per se valid only as to the arrestee's actual person or clothing (which cannot easily be separated from the person at the time of arrest). (See *U.S. v. Schleis* (8th Cir. 1978) 582 F.2d 1166, 1171 [disapproving station house search of arrestee's locked briefcase]; Butterfoss, *As Time Goes By: The Elimination of Contemporaneity and Brevity as Factors in Search and Seizure Cases, supra,* 21 Harv.C.R.-C.L. L.Rev. at p. 626 [noting possibility of reading *Edwards* as dependent on impossibility of taking arrestee's clothes until replacement clothes were available at the jail].) Indeed, the defendant in *Edwards* had objected, and the court of appeals had reversed his conviction, only on grounds that the delayed warrantless seizure of *his clothing* violated the Fourth Amendment to the United States Constitution. (*Edwards, supra,* 415 U.S. at p. 802, italics added.) No issue was presented as to the delayed warrantless seizure or search of *a container* carried by an arrestee.

*Edwards* nonetheless spoke broadly, and *Chadwick* suggests items beyond clothing may be subject to delayed warrantless search if they are "immediately associated with the person of the arrestee." (*Chadwick, supra,* 433 U.S. at p. 15; see also *id.* at p. 16, fn. 10 [describing *Robinson* (which involved search of a small container), as well as *Edwards,* as a search "of the person"].) The majority thus reasonably reads existing high court authority as permitting delayed warrantless searches of containers immediately associated with an arrestee's person.

The question is whether the information stored on electronic devices such as mobile phones, as at issue here, may be examined without a warrant under the same rationale. For two reasons, I would hold it may not.

First, as suggested earlier, the amount and type of personal and business information that can be stored on a mobile phone, smartphone or handheld computer, and would become subject to delayed warrantless search under the majority holding, dwarfs that which can be carried on the person in a spatial container.[8] As one federal district court observed in suppressing the fruits of a mobile phone search, "modern cellular phones have the capacity for storing immense amounts of private information. Unlike pagers or address books, modern cell phones record incoming and outgoing calls, and can also contain address books, calendars, voice and text messages, email, video and pictures. Individuals can store highly personal information on their cell phones, and can record their most private thoughts and conversations on their cell phones through email and text, voice and instant messages." (*U.S. v. Park* (N.D.Cal., May 23, 2007, No. CR 05-375 SI) 2007 U.S.Dist. Lexis 40596, pp. *21–*22, fn. omitted.) Smartphones, as we have seen, have even greater information storage capacities.

The United States Supreme Court's holdings on clothing and small spatial containers were not made with mobile phones, smartphones and handheld computers—none of which existed at the time—in mind. Electronic devices "contain" information in a manner very different from the way the crumpled cigarette package in *Robinson* contained capsules of heroin. (See *Robinson, supra*, 414 U.S. at p. 223.) Electronic devices, indeed, are not even "containers" within the meaning of the high court's search decisions. As the Ohio Supreme Court, rejecting application of the container cases to a mobile phone, noted, "[o]bjects falling under the banner of 'closed container' have traditionally been physical objects capable of holding other physical objects. Indeed, the United States Supreme Court has stated that in this situation, 'container' means 'any object capable of holding another object.' " (*State v. Smith* (2009) 124 Ohio St.3d 163 [920 N.E.2d 949, 954], quoting *New York v. Belton, supra*, 453 U.S. at p. 460, fn. 4.)[9]

---

[8] The majority observes that substantial private information can be carried in the nondigital forms of letters and diaries. (Maj. opn., *ante*, at p. 96.) Implicit in the majority's argument is the assumption that police may not only take a letter or diary from an arrestee and inventory it, but may, without a warrant, read through all of its contents. Neither this court nor the United States Supreme Court has so held.

[9] The *Belton* court stated: " 'Container' here denotes any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like." (*New York v. Belton, supra*, 453 U.S. at pp. 460–461, fn. 4.) As *Belton* clearly spoke only of objects physically containing other objects, the majority's reliance on that case for the proposition that any "container," whatever the extent of the arrestee's expectation of privacy in it, may be searched incident to arrest (maj. opn., *ante*, at p. 95) is misplaced when it comes to mobile phones and other electronic communication and data storage devices. Still less on point is *United States v. Ross* (1982) 456 U.S. 798 [72 L.Ed.2d 572, 102 S.Ct. 2157], which did not even involve a search incident to arrest. That the high court in *Ross* declined to distinguish among probable cause searches of "paper bags, locked trunks, lunch buckets, and

Second, the grounds for deeming an arrestee to have lost privacy rights in his or her *person* do not apply to the privacy interest in *data* stored on electronic devices. In *Robinson,* the Supreme Court, quoting with approval from a New York case, explained that while warrantless searches of the person are ordinarily unlawful, " '[s]earch of the person becomes lawful when grounds for arrest and accusation have been discovered, and *the law is in the act of subjecting the body of the accused to its physical dominion.' "* (*Robinson, supra,* 414 U.S. at p. 232, italics added.) In *Edwards,* the court reasoned that where the state has lawfully taken a person into custody, though not all his privacy interests are destroyed, the arrest " 'does—for at least a reasonable time and to a reasonable extent—take *his own privacy* out of the realm of protection from police interest in weapons, means of escape, and evidence.' " (*Edwards, supra,* 415 U.S. at pp. 808–809, italics added.) Citing *Robinson* and *Edwards,* the court subsequently distinguished "searches of the person," in which the arrest created a "reduced expectation[] of privacy," from searches of the possessions within an arrestee's control. (*Chadwick, supra,* 433 U.S. at p. 16, fn. 10.)

The warrantless search of an arrestee's person thus rests on a relatively simple, intuitively correct idea: the police, having lawful custody of the individual, necessarily have the authority to search the arrestee's body and seize anything of importance they find there. Having been lawfully arrested, with his or her person under the custody and control of the police, the individual can no longer claim in full the personal privacy he or she ordinarily enjoys. It does not follow, however, that the police also have " 'dominion' " (*Robinson, supra,* 414 U.S. at p. 232) over the entirety of stored messages, photographs, videos, memoranda and other records an arrestee may be carrying on a mobile phone or smartphone. An individual lawfully arrested and taken into police custody necessarily loses much of his or her *bodily* privacy, but does not necessarily suffer a reduction in the *informational* privacy that protects the arrestee's records. That an arrestee's interest in his or her " 'own privacy' " (*Edwards, supra,* 415 U.S. at p. 809) is severely reduced does not imply a corresponding reduction in privacy of personal and business data. Even when they happen to be stored on a device carried on the person, these records are clearly distinct from the person of the arrestee.

Because the data stored on a mobile phone or other electronic device is easily distinguished from the arrestee's actual person, and in light of the

---

orange crates" carried in automobiles (*id.* at p. 822) hardly requires that an arrestee's mobile phone, smartphone or handheld computer be treated the same as clothing or a crumpled cigarette package.

extraordinary potential for invasion of informational privacy involved in searching data stored on such devices, I would hold mobile phones, smartphones and handheld computers are not ordinarily subject to delayed, warrantless search incident to arrest. In the terms provided by the existing United States Supreme Court authority, search of the information stored on an arrestee's mobile phone or similar device should be treated as the search of an item "within an arrestee's immediate control" rather than a search "of the person." (*Chadwick, supra*, 433 U.S. at p. 16, fn. 10.) Once an arrestee's mobile phone or similar device is securely "under the exclusive dominion of police authority" (*id.* at p. 15), the arrest itself no longer serves to authorize a warrantless search of its stored data.

This is not to say police may never examine or search an arrestee's mobile phone without a warrant. Devices carried on the arrestee's person may be seized and secured. Some examination of the device, not amounting to a search of its data folders, might also be reasonable. (See, e.g., *U.S. v. Wurie* (D.Mass. 2009) 612 F.Supp.2d 104, 106–107 [when arrestee's mobile phone rang, officer flipped it open and observed originating number and "wallpaper" photograph, which led to discovery of arrestee's residence address].) And where the arresting officers have reason to fear imminent loss of evidence from the device, or some other exigency makes immediate retrieval of information advisable, warrantless examination and search of the device would be justified. (See, e.g., *U.S. v. Lottie* (N.D.Ind., Jan. 14, 2008, No. 3:07cr51RM) 2008 U.S.Dist. Lexis 2864, p. *9 [officers had reason to believe that accomplices in large drug transaction, "unknown but potentially present and armed," were conducting countersurveillance of the police operation, raising concern for safety of officers and the public].)

The majority's holding, however, goes much further, apparently allowing police carte blanche, with no showing of exigency, to rummage at leisure through the wealth of personal and business information that can be carried on a mobile phone or handheld computer merely because the device was taken from an arrestee's person. The majority thus sanctions a highly intrusive and unjustified type of search, one meeting neither the warrant requirement nor the reasonableness requirement of the Fourth Amendment to the United States Constitution. As a commentator has noted, "[i]f courts adopted this rule, it would subject anyone who is the subject of a custodial arrest, even for a traffic violation, to a preapproved foray into a virtual warehouse of their most intimate communications and photographs without

probable cause." (Orso, *Cellular Phones, Warrantless Searches, and the New Frontier of Fourth Amendment Jurisprudence, supra*, 50 Santa Clara L.Rev. at p. 211.) United States Supreme Court authority does not compel this overly permissive rule, and I cannot agree to its adoption.

Moreno, J., concurred.