Filed 1/14/15  P. v. Gonzales CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057971 |
| v. | (Super.Ct.No. FSB1101776) |
| REYES QUIROGA GONZALES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  R. Glenn Yabuno, Judge.  Affirmed.

Kyle D. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting, Sean M. Rodriguez, and Arlene A. Sevidal, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Reyes Q. Gonzales pled guilty to two counts of possession for sale of a

1

controlled substance (counts 1 & 3; Health & Saf. Code, § 11351)[1] after the court denied

his motion to suppress the evidence against him.  Pursuant to his plea agreement, the

court sentenced defendant to the upper term of four years on count 1 and a concurrent,

lower term of two years on count 3.  On appeal, defendant contends the court erred in

denying his motion to suppress the evidence.  In our original opinion, issued on June 18,

2014, we affirmed the judgment.

On July 2, 2014, defendant filed a petition for rehearing raising, among other

issues, a contention that the United States Supreme Court's decision in *Riley v. California*

(2014) ___ U.S. ___, 134 S.Ct. 2473 [2014 U.S. Lexis 4497] (*Riley*), issued on June 25,

2014, required suppression of the evidence obtained from defendant's cell phone.  On

July 10, 2014, we granted defendant's request for rehearing, in part, and permitted the

parties to file supplemental briefs limited to the issues of whether defendant had forfeited

the issue by failing to raise it in his briefs on appeal; whether *Riley* applied retroactively;

and to what remedy, if any, would defendant be entitled should we determine the cell

phone evidence should have been excluded.  After careful consideration, we affirm the

judgment.

---

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

FACTS AND PROCEDURAL HISTORY[2]

Detective Sean Flynn of the Redlands Police Department testified that on October 12, 2010, he was on duty at a motel in San Bernardino to investigate a report of drug activity. He observed defendant and Norra Mokhtar. Flynn contacted defendant who was standing next to a blue truck; Flynn asked if he could search defendant; defendant responded that he could.

Flynn found a plastic baggie containing heroin, Hydrocodone pills, and methamphetamine in defendant's pocket. Defendant also had $896 in cash. The heroin was separated into five baggies weighing in total 13.79 grams. The methamphetamine was separated into three different baggies weighing 5.63 grams in the aggregate. Defendant's cell phone contained text messages which reflected discussions regarding drug deals.

Defendant's motel room was searched in which more Hydrocodone pills were found. Two different types of Hydrocodone pills were found, 87 pills of one type and 28 pills of another type, between defendant's pocket and the motel room. Defendant admitted the pills were his. Based on the amount of drugs, the packaging, the lack of paraphernalia, and the text messages regarding drugs on defendant's cell phone, Flynn opined that the drugs were possessed for sales.

---

[2] The parties stipulated that the factual basis for defendant's plea was contained in the police reports, the preliminary hearing transcript, the complaint, and the information.

The People charged defendant by information with two counts of possession for sale of a controlled substance (counts 1 & 3; § 11351), heroin and methamphetamine respectively, and one count of possession for sale of a controlled substance, Hydrocodone (count 2; § 11378). The People additionally alleged prior narcotic conviction allegations attached to counts 1 through 3. (§ 11370.2, subds. (a) & (c).)

DISCUSSION

Defendant contends the court erred in declining to suppress the evidence against him. He argues the warrantless searches of his person and motel room were in violation of his constitutional rights. We disagree.

Defendant filed a motion to suppress the evidence against him in support of the information. The People filed a response to which defendant filed a reply. On October 5, 2012, and October 12, 2012, the court held hearings on defendant's motion.

Flynn testified that on October 12, 2010, he and four other officers arrived in a motel parking lot in San Bernardino in separate unmarked vehicles as part of a narcotics investigation. Flynn had specific information there was narcotics activity at that location. None of the police vehicles blocked the egress of any of the vehicles in the parking lot. Flynn observed four suspects, including defendant, exit room 129 of the motel; three of them, including Mokhtar and Robert Nolan, walked to a blue pickup truck parked in the parking lot. The fourth suspect entered a white pickup truck and left.

"All five officers made contact with the three subjects in the pickup. No one contacted the fourth subject that left the room." The officers approached the suspects

4

with their hands at their sides; none of them drew their weapons during their contact with the suspects. Flynn contacted defendant, identified himself as a police officer, and asked defendant if he could speak with him. Defendant said yes; Flynn then turned on his personal recorder. Defendant was free to leave during the initial encounter.

The People played an audio recording of the initial encounter with defendant. Flynn asked if defendant spoke English. Defendant responded that he did. Flynn asked if he could check defendant's person to make sure he did not have any weapons. Defendant agreed. Flynn found a plastic baggie containing pills, 13 grams of heroin, and five grams of methamphetamine sticking out from the top of defendant's right front pants pocket. Flynn detained defendant at that point. Flynn asked if the motel room from which defendant exited was his; defendant responded it was. Flynn asked if there were any other persons inside the motel room; defendant said there were not.

Flynn obtained the key to the room from the motel manager in order to conduct a protective sweep of the room. Afterward, Flynn went back to defendant, read him his *Miranda*[3] rights, and asked for permission to search the room. The People played a recording of Flynn's second conversation with defendant. During that conversation defendant admitted the heroin was his. Defendant said he took the pills for his teeth. The officers looked at defendant's cell phone and found text messages from defendant to

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

5

someone else regarding drug sales and the robbery of heroin from another individual.

Officer Dan Figgins testified he arrived at the motel at the same time as Flynn in a separate unmarked vehicle.[4] All the officers were dressed in regular street clothes with department issued black vests with a department badge on the front and "Police" written across the front and back of the vests. Figgins made contact with Mokhtar and asked if he could speak with her. She responded that he could. He asked if she had anything illegal on her. She said she did not. Figgins asked if there was anything illegal in Mokhtar's purse and whether she would mind if he checked. Mokhtar responded that she did not mind if he looked and told him there was a small amount of marijuana in her purse. Figgins found marijuana and methamphetamine in the purse. Figgins then detained Mokhtar and informed Flynn what he had found. None of the officers blocked the egress of defendant's truck with their vehicles. At no point did any of the officers remove their weapons during their encounter with the suspects.

Flynn then spoke with both Mokhtar and defendant. The People played another audio recording of a third conversation between Flynn and defendant. Flynn asked defendant if there was anything illegal in the motel room. Defendant responded that there were probably some pills in the drawer. Flynn asked if it was okay if the officers searched the motel room to make sure there were no illegal drugs or guns inside.

---

[4] Figgins initially testified there were five other officers in addition to himself, for a total of six officers. However, on cross-examination, Figgins implied, on separate occasions, there were only five and four officers in total.

Defendant responded "Yeah."

Nolan testified he exited the motel room with defendant. "[A]bout four" police officers pulled up on them wearing black jumpsuits and identifying themselves as police officers. The first thing Nolan saw was a gun: "I saw about four cops. One pulled a gun out, put it in the back of my head and said get up against your car." There were about four officers, all of whom had their weapons drawn. The officers searched Nolan and his vehicle without asking permission to do so. They did not find anything illegal on Nolan. An officer searched defendant.

The court indicated a tentative decision to deny the motion to suppress, but allowed argument on the matter and offered defendant the opportunity to file a supplemental brief. On November 2, 2012, defendant filed a supplemental brief in support of his motion to suppress the evidence. On November 8, 2012, the People filed a response.[5] On December 14, 2012, the court indicated it had considered the supplemental briefs and denied the motion to suppress as indicated in its tentative decision.

Thereafter, defendant pled guilty to counts 1 and 3. Pursuant to the plea bargain, on the People's motion, the court dismissed count 2. The prior narcotic conviction allegations attached to all counts were stricken.

---

[5] Neither party at any point in the trial court introduced evidence, cited authority, or argued whether the text messages obtained from defendant's cell phone should be excluded from evidence.

7

A.  Search of Defendant's Person.

"'Our review of issues related to the suppression of evidence seized by the police is governed by federal constitutional standards.'  [Citations.]  'In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence.  [Citation.]  We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.'  [Citation.]"  (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1223.)  "[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority.  [Citations.]"  (*Florida v. Royer* (1983) 460 U.S. 491, 497.)

"Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. . . .  Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search . . . provided they do not induce cooperation by coercive means. . . .  If a reasonable person would feel free to terminate the encounter, then he or she has not been seized."  (*United States v. Drayton* (2002) 536 U.S. 194, 200-201 (*Drayton*).)

"The Fourth Amendment permits police officers to approach [individuals] at

8

random to ask questions and to request their consent to searches, provided a reasonable person would understand that he or she is free to refuse. . . ." (*Drayton, supra,* 536 U.S. at p. 197 [Bus passengers' acquiescence to three police officers' requests to check their bags while they were on the bus during refueling with no particularized suspicion and no declaration that the passengers need not comply did not violate Fourth Amendment prohibition against unreasonable searches.].)

Here, we defer to the court's factual findings. The court stated in its tentative decision that "in this particular case there were five officers approaching four people as they were leaving a motel room. One person leaves in a truck, and none of the officers follow that person or tries to stop that vehicle. The officers pull up in their cars. They do not block the cars in. One of the officers is — has a canine which remains in the vehicle. The officers testified that their guns were not drawn. That there was no command to stop or submit. . . . Very shortly after the contact was made with them, drugs were observed on [defendant] coming out of his pocket. Which then at that time creates probable cause to detain him." "It's the court's . . . opinion that based on the circumstances of this case that it was initially a consensual encounter based on the facts indicated . . . . And that shortly, within less than a minute, apparently it turned into probable cause for a detention because of the narcotics found on the person of both [defendant] and [] Mokhtar."

Thus, here, Flynn's request to patdown defendant and defendant's acquiescence made the "search" consensual and, therefore, not violative of the Fourth Amendment's proscription against unreasonable search and seizures. The five officers were wearing

vests identifying them as police officers. They identified themselves as police officers. Although all the officers had sidearms, the court specifically found they remained holstered during the entire encounter. This determination was well supported by the testimony. "Officers are often required to wear uniforms and in many circumstances this is cause for assurance, not discomfort. Much the same can be said for wearing sidearms. That most law enforcement officers are armed is a fact well known to the public. The presence of a holstered firearm thus is unlikely to contribute to the coerciveness of the encounter absent active brandishing of the weapon." (*Drayton, supra,* 536 U.S. at pp. 204-205.)

Flynn testified defendant was free to leave at the time he initially approached defendant. The officers' vehicles did not block in defendant's vehicle; thus, defendant could have left in the blue pickup truck at any time. Flynn asked defendant if he could check defendant's person for weapons. Defendant responded that Flynn could. Flynn found a bag containing heroin, Hydrocodone, and methamphetamine sticking out of defendant's pants pocket. This was sufficient probable cause to warrant Flynn's then detention of defendant. "There was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice. It is beyond question that had this encounter occurred on the street, it would be constitutional." (*Drayton, supra,* 536 U.S. at p. 204.) Therefore, the court properly denied defendant's motion to suppress the evidence found on his person.

10

B. Search of Defendant's Motel Room.

"The sanctity of the home is not threatened when police approach a residence, converse with the homeowner, and properly obtain consent to search. The Fourth Amendment's prohibition against warrantless searches of homes does not apply when voluntary consent to the search has been given by someone authorized to do so. [Citation.] Regardless of the tip that brought the officers to [the defendant's] door, it was her consent that allowed them to enter and search. There is no evidence that this consent was involuntary. [The defendant] had the right to refuse to speak with the officers and to deny them entry. As this court [has previously] observed . . . a *request* to enter and search, 'by its nature, carries the implication that permission may be withheld.' No heightened level of Fourth Amendment scrutiny arises in this consensual contact, either because it was precipitated by an anonymous tip or because it occurred at a home." (*People v. Rivera* (2007) 41 Cal.4th 304, 311, quoting *People v. Ledesma* (2006) 39 Cal.4th 641, 704.) "This protection extends to motel and hotel rooms in which the occupant has a reasonable expectation of privacy. [Citations.]" (*People v. Parson* (2008) 44 Cal.4th 332, 345.)

Defendant informed Flynn the motel room was his. Once Flynn detained defendant, he read defendant his *Miranda* rights which defendant expressed he understood. Defendant admitted the pills were his. During the protective sweep of the motel room, the officers had not observed anything illegal. Flynn asked defendant if anything else illegal was in the motel room. Defendant responded that there were

11

probably some pills in the drawer. Flynn asked if he could search the room to check for illegal drugs. Defendant gave permission to search the room. Thus, the search of defendant's motel room and seizure of the Hydrocodone pills in the drawer were the result of defendant's express consent. The court properly denied defendant's motion to suppress the evidence against him.

C. Search of Defendant's Cell Phone.

In *Riley,* the United States Supreme Court held that police must generally obtain a warrant to search a suspect's phone and may no longer rely on the search incident to arrest exception to the Fourth Amendment's requirement of a warrant. (*Riley, supra,* ___ U.S. at p. ___ [134 S.Ct. at pp. 2485, 2494].) Here, it is uncontested that the police did not obtain a search warrant prior to seizing and searching defendant's cell phone. The parties also agree that *Riley* applies retroactively. (*People v. Cage* (2007) 40 Cal.4th 965, 974 fn. 4 ["A new rule announced by the high court applies to all criminal cases still then pending on appeal. [Citations.]".]; *People v. Mickle* (1991) 54 Cal.3d 140, 200, fn. 1.) It is likewise uncontested that the matter must be reversed and remanded should this court find that the text evidence discovered on defendant's cell phone should have been excluded from evidence. (*People v. Hill* (1974) 12 Cal.3d 731, 769; accord *People v. Miller* (1983) 33 Cal.3d 545, 550-556.) Nevertheless, we hold defendant forfeited the issue by failing to raise it both in the trial court and on appeal. Thus, we will briefly address this argument. Regardless, even if defendant did not forfeit the issue, the officer's search of defendant's cell phone was warranted under the good faith exception

12

to the Fourth Amendment requirement of a warrant.

Defendant contends the text messages implicating drug sales found on his cell phone should have been excluded from evidence. However, defendant never specifically raised the issue in the trial court or on appeal. Instead, defendant raised the issue for the first time in his petition for rehearing. (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1092 [Arguments cannot be raised for the first time in a petition for rehearing.]), abrogated on another ground in *Martinez v. Combs* (2010) 49 Cal.4th 35, 62-66 Although in his petition for rehearing, defendant argues he raised the issue of whether the contents of his cell phone should have been suppressed in his opening brief, defendant later concedes he did not raise the issue. We note that, although defendant did mention that the contents of his cell phone should have been excluded from evidence, defendant neither argued nor cited any authority for the contention. (See *In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 690, fn. 18 [failure to develop an argument or cite any authority in support of a contention results in forfeiture of the issue on appeal].)

In his supplemental briefs on rehearing, defendant argues that he cannot be expected to bear the unreasonable burden of raising issues based on anticipation of potentially unforeseen changes in the law.[6] However, the very fact that defendant noted

---

[6] The People noted in its original brief that the issue of whether the contents of defendant's cell phone should have been excluded from evidence was foreclosed by the

*[footnote continued on next page]*

13

the issue, but failed to develop it in his opening brief, reflects that this was not an issue unforeseen by defendant. Likewise, the fact that the People noted that *Riley* remained on the United States Supreme Court docket prior to the time defendant filed his final brief reflects the issue would not have been frivolously raised. Indeed, appellate counsel regularly raise issues on appeal in order to preserve the issue for federal review although acknowledging binding precedent precludes state resolution in their clients' favor. (*People v. Capistrano* (2014) 59 Cal.4th 830, 878; *People v. Contreras* (2013) 58 Cal.4th 123, 172; *People v. Salcido* (2008) 44 Cal.4th 93, 163; *People v. Perry* (2006) 38 Cal.4th 302, 322; *People v. Cudjo* (1993) 6 Cal.4th 585, 635; *Davis v. U.S.* (2011) __ U.S. __ [131 S.Ct. 2419, 2426].) Defendant could have, but did not, file a motion to file supplemental briefing in order to raise this issue at any time prior to final briefing, issuance of our tentative opinion, oral argument, or the filing of our initial opinion. Rather, defendant waited until his filing of the petition for rehearing to raise the issue. (*Reynolds v. Bement, supra,* 36 Cal.4th at p. 1092 [Arguments cannot be raised for the first time in a petition for rehearing.], abrogated on another ground in *Martinez v. Combs* (2010) 49 Cal.4th 35, 62-66.) Thus, we believe defendant forfeited the issue by failing to raise it properly prior to the filing of our initial opinion. Nevertheless, even if defendant

---

*[footnote continued from previous page]*
California Supreme Court's decision in *People v. Diaz* (2011) 51 Cal.4th 84 (*Diaz*), which held that a warrantless search of a cell phone incident to a lawful arrest is valid. (*Id*. at p. 101.) We did not address the issue in our original opinion because defendant did not develop any argument on the issue in either of his original appellate briefs.

did not forfeit the issue, we hold defendant's text messages were properly admitted, as discussed below, as the product of the good exception to the Fourth Amendment's requirement of a warrant.

With regard to the issue of whether the contents of defendant's cell phone should have been excluded from evidence, we hold that the good faith exception to the Fourth Amendment's requirement of a warrant applies. Thus, the evidence of defendant's text messages was admissible even though the warrantless search of defendant's cell phone was unlawful under *Riley*.

"Under the current provisions of the California Constitution, evidence sought to be introduced at a criminal trial is subject to suppression as the fruit of an unconstitutional search and seizure 'only if exclusion is . . . mandated by the federal exclusionary rule applicable to evidence seized in violation of the Fourth Amendment [of the United States Constitution].'" (*People v. Maikhio* (2011) 51 Cal.4th 1074, 1089, quoting *In re Lance W.* (1985) 37 Cal.3d 873, 896; see Cal. Const., art I, § 28, subd. (f)(2).)

"The [Fourth] Amendment says nothing about suppressing evidence obtained in violation of [its] command. That rule—the exclusionary rule—is a 'prudential' doctrine, [citation], created by this Court to 'compel respect for the constitutional guaranty.' [Citations.] Exclusion is 'not a personal constitutional right,' nor is it designed to 'redress the injury' occasioned by an unconstitutional search. [Citations.] The rule's sole purpose, we have repeatedly held, is to deter future Fourth Amendment violations. [Citations.] Our cases have thus limited the rule's operation to situations in which this

15

purpose is 'thought most efficaciously served.'  [Citation.]  Where suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.'  [Citation.]" (*Davis v. United States, supra,* __ U.S. at p. __ [131 S.Ct. at pp. 2426-2427] (*Davis*).)

The high court has held that the decision whether to suppress evidence obtained in violation of the Fourth Amendment "must also account for the 'substantial social costs' generated by the rule," because "[e]xclusion exacts a heavy toll on both the judicial system and society at large.  [Citation.]" (*Davis*, *supra*, 131 S.Ct. at p. 2427.)  "Our cases hold that society must swallow this bitter pill when necessary, but only as a 'last resort.' [Citation.]  For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs.  [Citations.]" (*Ibid.*)  In a series of cases starting with *United States v. Leon* (1984) 468 U.S. 897 (*Leon*), the United States Supreme Court concluded that "the deterrence benefits of exclusion 'var[y] with the culpability of the law enforcement conduct' at issue.  [Citation.]  When the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs.  [Citation.]  But when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful, [citation], or when their conduct involves only simple, 'isolated' negligence, [citation], the '"deterrence rationale loses much of its force,"' and exclusion cannot 'pay its way.'  [Citation.]" (*Davis*, at pp. 2427-2428.)

"Police practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield 'meaningfu[l]' deterrence, and culpable enough to be 'worth

16

the price paid by the justice system.' [Citation.] The conduct of the officers here was neither of these things." (*Davis, supra,* 131 S.Ct. at p. 2428.) Nor did the high court conclude that the officers "violate[d] Davis's Fourth Amendment rights deliberately, recklessly, or with gross negligence," or that the "case involve[d] any 'recurring or systemic negligence' on the part of law enforcement. [Citation.]" (*Ibid.*)

Where police conduct a search in objectively reasonable reliance on then binding judicial precedent, the good faith exception bars application of the exclusionary rule. (*United States v. Garcia* (September 12, 2014, N.D. Cal.) __ F.Supp.3d __ [2014 WL 4543163, 7] [Evidence obtained by police search of the defendant's cell phone prior to the decision in *Riley* not subject to exclusionary rule based on good faith reliance upon *Diaz.*]; *U.S. v. Peel* (E.D. Cal. Aug. 25, 2014, No. 2:14-cr-00192-GEB) 2014 WL 4230926, 6-7 [same]; *Davis, supra,* 131 S.Ct. at pp. 2428-2429; *People v. Youn* (2014) 2014 Cal.App. LEXIS 799, *12-13.) "[I]n 27 years of practice under [the] good-faith exception, we have 'never applied' the exclusionary rule to suppress evidence obtained as a result of nonculpable, innocent police conduct. [Citation.]" (*Davis,* at p. 2429.)

Penalizing officers for following appellate court precedent later shown to be in error would not logically deter future Fourth Amendment violations. (*Davis, supra*, 131 S.Ct. at p. 2427.) "About all that exclusion would deter in this case is conscientious police work. . . . An officer who conducts a search in reliance on binding appellate precedent does no more than "'ac[t] as a reasonable officer would and should act'" under the circumstances. [Citation.]" (*Id.* at p. 2429.) The same is true here.

17

*People v. Diaz*, previously published at 165 Cal.App.4th 732 on July 30, 2008, held that a search of the defendant's cell phone was a valid search incident to arrest. (*Id.* at p. 738.) The California Supreme Court granted review in that case on October 28, 2008. (*People v. Diaz* (2008) 196 P.3d 220 (S166600).) In its opinion issued on January 3, 2011, the California Supreme Court affirmed the court appeal, holding "that, under the United States Supreme Court's binding precedent, such a search is valid as being incident to a lawful custodial arrest." (*People v. Diaz* (2011) 51 Cal.4th 84, 88.) On January 17, 2014, the United States Supreme Court granted Certiorari in the unpublished decision in *People v. Riley*, which issued on February 8, 2013. (*Riley v. California* (2014) 134 S.Ct. 999.) In its final decision in that matter, the court held that, generally, police officers may not conduct a search, incident to arrest, of the contents of a cell phone without first obtaining a warrant. (*Riley, supra,* ___ U.S. at p. __ [134 S.Ct. 2473].)

Although *Diaz* was decided after the police search in the instant case, as the People note, ample judicial precedent existed for their search of defendant's cell phone at the time. The binding United States Supreme Court precedents relied upon by the California Supreme Court in *Diaz*, included *U.S. v. Robinson* (1973) 414 U.S. 218, 224, *U.S. v. Edwards* (1974) 415 U.S. 800, 802-803, and *U.S. v. Chadwick* (1977) 433 U.S. 1, 14-15. *Diaz*'s distillation of the rule of law from these cases was that any personal property immediately associated with the person of a suspect, including objects in or on the suspect's clothing, regardless of whether there is probable cause to believe the defendant is about to destroy evidence, are lawfully seized and searched when incident to

18

a lawful arrest.  (*People v. Diaz, supra,* 51 Cal.4th at pp. 91-95, *Robinson,* at pp. 222-224, 235, *Edwards,* at pp. 802-809.)  The only exclusion from this rule are objects "'*not immediately associated with the person of the arrestee* to their exclusive control . . . .'" (*Diaz,* at p. 92 quoting *Chadwick,* at p. 15 [A 200-pound, double-locked footlocker loaded into the trunk of the suspects' car seized after suspects' arrest and transport to detention facility was not immediately associated with the persons of the arrestees and not under their control.)  "The area within an arrestee's immediate control is '"the area from within which [the arrestee] might gain possession of a weapon or destructible evidence." [Citations.]'  [Citation.]" (*Diaz,* at p. 90, fn. 2, quoting *Chadwick,* at p. 14.)

Here, to the extent the record has been developed on this issue, it appears Flynn seized and searched defendant's cell phone from defendant's person after having read defendant's *Miranda* rights and immediately after defendant admitted the heroin found on his person belonged to him, but prior to defendant's formal arrest.  (*Rawlings v. Kentucky* (1980) 448 U.S. 98, 111 ["Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa.  [Citations.]"])  The cell phone was an item in defendant's clothing immediately associated with him which was taken immediately incident to lawful arrest.  Thus, the police acted in good faith reliance upon binding United States Supreme Court precedent as it existed at the time.

Furthermore, at the time of the search, several federal circuit court decisions expressly held that warrantless searches of cell phones incident to lawful arrest were

19

appropriate.[7] (*U.S. v. Murphy* (4th Cir. 2009) 552 F.3d 405, 411; *Silvan W. v. Briggs* (10th Cir. 2009) 309 Fed.Appx. 216, 225; *U.S. v. Finley* (5th Cir. 2007) 477 F.3d 250, 259-260; *U.S. v. Mendoza* (8th Cir. 2005) 421 F.3d 663, 667-668; see *U.S. v. Ortiz* (7th Cir. 1996) 84 F.3d 977, 984 [Warrantless search of pager proper as incident to lawful arrest.].)  Similar to the police in *Davis*, the police in this case conducted a warrantless search in good faith reliance on then-binding United States Supreme Court and Circuit Court authority which held that no warrant was required.  The record contains no evidence the officers' warrantless search of defendant's cell phone was done "deliberately, recklessly, or with gross negligence," and "involve[d] any 'recurring or systemic negligence' on the part of law enforcement" (*Davis*, *supra*, 131 S.Ct. at p. 2428) to act in contravention of binding law requiring a warrant.  To penalize the police in this case for error which was only brought to light *after* the search of defendant's cell phone, would not logically serve to deter future Fourth Amendment violations.  (*Davis,* at p.

---

[7] "There is legitimate debate about whether precedent from Circuit A could be deemed 'binding' (for the purpose of *Davis*) when the search occurs in Circuit B, where the issue remains unresolved.  Still, police and the FBI (or the lawyers advising them) often rely on precedent from one circuit when another has yet to address a question.  One can doubt that much deterrence is to be had from telling the police that they are not entitled to rely on decisions issued by several circuits, just because the circuit covering the state in which an investigation is ongoing lacks its own precedent.  If the question were whether police . . . [who acted] in reliance on Circuit A's precedent, could be ordered to pay damages when, years later, Circuit B disagreed with Circuit A, the answer would be no.  It's hard to see why the exclusionary rule should be handled differently.  But that's a question for another day." (*U.S. v. Brown* (2014 C.A.7 Wis.) 744 F.3d 474, 478.)

2429.)  Therefore, because the officers acted "in objectively reasonable reliance on binding appellate precedent", the search here is not subject to the exclusionary rule.[8]  (*Id.*, at pp. 2423-2424.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


CODRINGTON
J.

We concur:


KING
Acting P. J.


MILLER
J.

---

**8**  Courts from other jurisdictions have concluded that evidence obtained through pre-*Riley* warrantless searches of cell phones should not be suppressed based on the good faith exception as applied in *Davis*.  (*U.S. v. Miller* (D.Md. 2014) __ F.Supp.3d __ [2014 WL 4792660, 13]; *United States v. Garcia*, *supra,* __ F.Supp.3d at p. __ [2014 WL 4543163, 7]; *U.S. v. Peel, supra,* 2014 WL 4230926, at p. 7; *U.S. v. Lustig* (S.D.Cal. 2014) 3 F.Supp.3d 808, 819; *State v. Subdiaz-Osorio* (Wis. 2014) 849 N.W.2d 748, 782 (conc. opn. of J. N. Patrick Crooks); *U.S. v. Spears* (July 14, 2014; N.D. Tex.) __ F.Supp.2d __ [2014 WL 3407930, 4]; *U.S. v. Clark* (June 26, 2014; E.D.Tenn.) __ F.Supp.2d __ [2014 WL 2895457, 3]; contra, *U.S. v. Eisenhour* (D.Nev. 2014) __ F.Supp.2d __ [2014 U.S. Dist. LEXIS 119101, 7]; *Willis v. State* (Fla.App.2 Dist. 2014) 148 So.3d 480, 483.)